Oldham, J. This was an action brought by Beebe against Fitzgerald before a justice of the peace on an account for thirty-three dollars for two months rent of a store in the city of Little Rock. Upon the trial before the justice, Beebe recovered judgment against Fitzgerald for sixteen dollars and sixty-six cents and costs; from which he appealed, and entered into recognizance with Fowler a>s his security. Upon a trial anew in the circuit court, Beebe again recovered judgment against the appellant and his security in the appeal for thirty dollars and costs. Numerous deeds were offered in evidence to establish title in Beebe, which appears to have been controverted, and upon closing his evidence the appellant offered to read certain documents in evidence to establish title in Whiting and Slark, and to give parol proof that he entered into the premises by their permission and held under them, but the court refused to permit him to do so; to all which, in admitting the papers in evidence offered by Beebe to establish his title, and in refusing those offered by Fitzgerald for the purpose of establishing title in Whiting and Slark, and in refusing parol evidence to prove that he entered by their permission and held under them as their tenant, he by his counsel excepted and placed the exceptions upon the record. He also excepted to certain instructions of the court. The case has been brought into this court by a. writ of error for review. It is first insisted by the plaintiffs in error that a justice of the peace has no jurisdiction, under our laws, of “an action on the case for use and occupation where the title to land comes in question.” The action of assumpsit for use and occupation is unknown to the common law, and in England owes its existence to the statute of 11 Geo. 2, ch. 19, sec. 14, which enacts that where the agreement is not by deed the landlord may recover a reasonable satisfaction for the lands occupied by the defendant, in an action on the case for use and occupation of what was so held and enjoyed, and that if it shalf appear that there was a parol demise, or an agreement, not by deed, wherever a certain rent was reserved, the plaintiff shall not therefore be nonsuited, but shall make use thereof as evidence of the quantum, of damages to be recovered. In this State, the action depends upon a similar statute. By the Rev. St. ch. 88, sec’s 11, 12, 13, it is enacted “that a landlord may recover in an action on the case, a reasonable satisfaction for the use and occupation of any lands and tenements held by any person under an agreement not made by deed. If a parol demise, or other agreement not by deed by which a certain rent is reserved, appear in evidence on the trial of such action, the plaintiff shall not on that account be barred from a recovery, but may make use thereof as evidence of the amount of damages to be recovered; that when lands or tenements are held and occupied by any person without any special agreement for rent, the owner of such lands or tenements, his executor and administrator, may sue for and recover a fair and reasonable compensation for such use and occupation by an action on the case in any court having jurisdiction thereof.” This distinction may be marked between ours and the English statute. Ours, by the 13th section, authorizes the recovery of a fair and reasonable compensation by the owner of the lands, his executors and administrators, of the occupant without any special agreement for rent; the other authorizes a parol demise, or an agreement not being by deed, wherever a certain rent is reserved, to be used as evidence of the quantum of damages to be recovered. In all other respects the two statutes are precisely similar, and are subject to the same construction. The action on the case, given by the statute of 11 Geo. 2, has always been considered assumpsit upon an express or implied contract and not an action on the case ex delicto. As before remarked, this action is dependent upon legislative enactment for its existence in this State. At the time of the adoption of our constitution it was unknown to our laws, and until the passage of the act above cited, it is very clear that justices of the peace had no jurisdiction over the subject matters contained in the act, but the parties wrere compelled to resort to a different remedy, to be enforced by a different tribunal. Without determining whether the action for use and occupation may be sustained by a mere stranger for the purpose of asserting his title to the premises alleged to have been occupied, without establishing the relation of landlord and tenant, and without proving an occupation by his permission of the premises by the defendant, either by express or presumptive evidence, as the question does not properly present itself here, we will proceed to determine whether the legislature has authorized justices of the peace to take cognizance of a case for use and occupation where the title to land comes in question? The act does not specify the court in which the landlord or owner of the land shall sue, but merely authorizes him to sue in any court having jurisdiction. Again, by the Rev. St. ch. 87, sec. 4, it is expressly enacted that justices of the peace shall not have jurisdiction in any case, where the title to lands comes in question. Therefore, taking the two acts together, as being in pari materia, it is very clear, that, so far as the jurisdiction is dependent upon legislative enactment, justices of the peace have no power to entertain an action for use and occupation where the title of the plaintiff may be disputed and drawn into question and controversy by the occupant. But it is insisted that the jurisdiction is given by the constitution, inasmuch as the remedy given by the statute is assumpsit, and is based upon a contract either express or implied. To this we answer that, at the time of the adoption of our constitution, the action for use and occupation was unknown to our laws, and did not therefore come within the meaning of the language employed, “ exclusive original jurisdiction in all matters of contract, except actions of covenant, where the sum in controversy is of one hundred dollars and under,” and consequently, so far as it depends upon any constitutional provision affirmatively conferring the jurisdiction upon justices of the peace, the claim to it must fail. But, even conceding that the action comes clearly within the constitutional grant of jurisdiction to justices of the peace, we again meet with insurmountable objections whenever that jurisdiction is attempted to be exercised in cases like the one now before us. As a substantive matter of jurisdiction, they have no power or authority whatever to determine title to real estate. Should they be permitted to use their jurisdiction over one class of cases so as to draw into controversy before them, as mere incidents, matters of the most intricate character and highest magnitute, involving the most subtle and abstruse questions in the whole science of the law, and for the determination of which the constitution has specially provided a different tribunal? The sum in controversy in this case is but thirty-three dollars, merely nominal, yet to effect its recovery it is attempted to draw into the controversy the title to real estate of the value of, perhaps, twenty thousand dollars, tobe determined upon by a justice of the peace, who, to arrive at any conclusion, must pass upon the validity and legal effect of a mass of title papers, consisting of patents from the President of the United States, deeds, mortgages, judgments, executions, sheriff’s returns, certificates of acknowledgments, as well as numberless other matters, requiring the most thorough legal knowledge to comprehend and elucidate. The subject matter in dispute between the parties is insignificant, while the incident, which is attempted to be drawn in by it, is of the greatest magnitude and completely overwhelms it. The attempt to draw such important questions into the jurisdiction of justices of the peace, by such slight and trivial pretexts, cannot be regarded otherwise than as an attempted fraud upon the jurisdiction of the circuit courts. The moment the justice of the peace saw that the title to the land must come in controversy before him he should have dismissed the case, refusing to take further cognizance of it: and so when the case came into the circuit court upon appeal, that court, possessing no other authority over it than the justice, should have dismissed it for the same reason. For these reasons the judgment of the circuit court is reversed and the cause remanded with directions to dismiss the same for want of jurisdiction. Reversed.